FILED
IN CLERKS OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAR 28 2000 ★

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------X

Todd Bank,

                          Plaintiff,          CV-97-7470 (CPS) (CLP)

          - against -                          MEMORANDUM
                                               AND ORDER
Brooklyn Law School,

                          Defendant.

-----------------------------------------------X

SIFTON, Senior Judge

          Plaintiff *pro se* Todd Bank, an attorney, sues defendant
Brooklyn Law School, alleging violations of the Racketeering
Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961
*et seq.*, and related state causes of action, arising out of
plaintiff's pursuit of a juris doctor degree at the defendant
institution.  Presently before the Court is defendant's motion to
dismiss plaintiff's amended complaint pursuant to Federal Rules
of Civil Procedure 12(b)(6) and 9(b) for failure to state a claim
upon which relief may be granted and failure to plead fraud with
particularity.  For the reasons set forth below, defendant's
motion is granted.

                          BACKGROUND

          For the purposes of the motion to dismiss, I assume as
true the following facts alleged in or to be inferred from the
amended complaint, drawing every inference in plaintiff's favor.



- 2 -

Plaintiff attended Brooklyn Law School from the fall of 1993 through the spring of 1996, when he received his juris doctor degree.  He is currently admitted to practice law in New York and New Jersey.

In December 1992, the defendant law school mailed survey questionnaires to the 469 graduates of its class of 1992, seeking to obtain information concerning, among other things, their starting salaries upon completion of law school.  From December 1992 until February 1993, defendant received responses to its questionnaire from its 1992 graduates in self-addressed stamped envelopes provided by defendant to facilitate a response to its survey.  Sometime in February 1993, defendant sent, via facsimile, the results of its survey to *U.S. News* and World Report, Inc. ("*U.S. News*"), stating that the average salary of its 1992 graduates employed in the private sector was $60,328. Defendant informed *U.S. News* of the salary figure because it wished to be listed in *U.S. News'* annual law school survey that appeared in the March 22, 1993 issue of *U.S. News* magazine.  The *U.S. News* law school survey is alleged in the amended complaint to be widely read and to provide information to prospective law school students to assist them in determining which law school to attend.

Prior to the publication of *U.S. News'* March 22, 1993 issue, defendant authorized *U.S. News* to publish the above salary figure by having one of its representatives send, via facsimile, a form verifying the accuracy of the salary information.  Despite

its awareness of the manner in which *U.S. News* would use the salary information, plaintiff alleges that defendant authorized its publication knowing that the salary information was false. Specifically, plaintiff alleges that defendant knew or was recklessly indifferent to the fact that the average salary for its class of 1992 graduates employed in the private sector was, at best, one-third less than $60,328.

Plaintiff further alleges that defendant was motivated to publish the false salary information in *U.S. News* to induce prospective students to accept offers of admission; to enlarge the pool of applicants to allow defendant to be more selective in making offers of admission; to be less dependent on scholarships and grants in convincing selective students to attend and; to induce high-caliber students to attend, thereby enhancing defendant's prestige.

Sometime in March 1993, plaintiff alleges he purchased and read the law school survey. In choosing to attend Brooklyn Law School, plaintiff says he relied on the average salary information published in the March 23, 1993 issue of *U.S. News* and was persuaded by the allegedly false salary information to attend Brooklyn Law School. Plaintiff alleges that he was damaged in that his law degree is worth substantially less than it would have been had the salary information published in *U.S. News* been correct.

Plaintiff further alleges that in 1994, after completing his first year of law school, he rejected an offer to

- 4 -

transfer the State University of New York at Buffalo ("SUNY Buffalo") law school because of the disparity between the average salary figures for graduates of Brooklyn Law School and SUNY Buffalo, published in the March 21, 1994 issue of *U.S. News* magazine.  According to the amended complaint, the results of the law school survey showed that the average salary of a 1993 SUNY Buffalo graduate employed in the private sector was $41,074, a figure substantially lower than that reported for a 1993 Brooklyn Law School graduate.  The 1993 figures are again alleged to have been intentionally or recklessly falsified by defendant. Plaintiff alleges that he was damaged in that he paid at least $30,000 more in tuition and living expenses for two years of study at Brooklyn Law School than he would have paid had he enrolled at SUNY Buffalo.

Plaintiff seeks to state a claim under 18 U.S.C. § 1962(c), alleging he was fraudulently induced to attend Brooklyn Law School.  Plaintiff also seeks to state a claim of conspiracy to violate RICO under 18 U.S.C. § 1962(d).  In connection with this second claim, plaintiff alleges that defendant and Cardozo Law School conspired to submit false information to *U.S. News* so as to prevent him and other prospective law students from making a comparison between the two schools.  In connection with the alleged RICO violations, plaintiff attempts to plead nineteen RICO enterprises in support of his allegation of a violation of 18 U.S.C. § 1962(c).  The

- 5 -

nineteen enterprises, each one consisting of a distinct set of

participants, are as follows:

> 1. Defendant, Cardozo Law School, *U.S. News*, NALP,[1]
> graduates of Brooklyn Law School, and graduates of
> Cardozo Law School;
> 2. Defendant, Cardozo Law School, *U.S. News*, and NALP;
> 3. Defendant, Cardozo Law School, *U.S. News*, graduates
> of Brooklyn Law School, and graduates of Cardozo Law
> School;
> 4. Defendant, Cardozo Law School, and *U.S. News*;
> 5. Defendant, Cardozo Law School, and NALP;
> 6. Defendant, Cardozo Law School, NALP, graduates of
> Brooklyn Law School, and graduates of Cardozo Law
> School;
> 7. Defendant, *U.S. News*, NALP, graduates of Brooklyn
> Law School, and graduates of Cardozo Law School;
> 8. Defendant, *U.S. News*, and NALP;
> 9. Defendant, *U.S. News*, and graduates of Brooklyn Law
> School;
> 10. Defendant and *U.S. News*;
> 11. Defendant and Cardozo Law School;
> 12. Defendant and NALP;
> 13. Defendant and graduates of Brooklyn Law School;
> 14. Defendant, NALP, and graduates of Brooklyn Law
> School;
> 15. Defendant, Cardozo Law School, graduates of
> Brooklyn Law School, and graduates of Cardozo Law
> School;
> 16. *U.S. News*, NALP, and graduates of Brooklyn Law
> School;
> 17. *U.S. News* and NALP;
> 18. *U.S. News* and graduates of Brooklyn Law School;
> 19. NALP and graduates of Brooklyn Law School.  (*See*
> Am. Cpl. ¶ 22.)

Plaintiff also attempts to state related claims of fraud, deceit,

intentional misrepresentation, negligent misrepresentation, and

unjust enrichment in violation of state law.

---

[1] The National Association for Law Placement ("NALP") is the organization
that designs the questionnaires that the graduates of both Brooklyn Law School
and Cardozo Law School are asked to answer by their respective schools.
According to the amended complaint, NALP's purpose is to provide information
concerning legal employment.

- 6 -

Plaintiff filed this action, which was originally assigned to Judge David G. Trager, on December 19, 1997. On December 22, 1997, this action was reassigned to Judge Raymond J. Dearie. On February 22, 1998, defendant moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff then submitted an amended complaint on April 24, 1998. On July 23, 1998, defendant moved to dismiss the amended complaint. After several extensions of time granted to both sides, the motion to dismiss was fully briefed on February 24, 1999. On December 2, 1999, Judge Dearie recused himself and the instant case was reassigned from Judge Dearie to the undersigned.

DISCUSSION

Faced with a motion to dismiss a complaint for failure to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6), the court must accept as true all factual averments in the complaint and must not dismiss the complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Easton v. Sundram*, 947 F.2d 1011, 1014-15 (2d Cir. 1991) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (citations omitted)). "The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

- 7 -

### Plaintiff's RICO Claims

Count one of the amended complaint alleges that defendant violated and conspired to violate Section 1962(c) of the Racketeer Influenced and Corrupt Organizations Act otherwise known as RICO, 18 U.S.C. § 1962, which provides in relevant part:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity ....

> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

While RICO is a criminal law, 18 U.S.C. § 1964(c) gives persons injured by conduct proscribed in Section 1962 the right to bring a civil suit for treble damages and costs including attorneys fees.

There are seven elements to a RICO claim brought under Section 1962(c): "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983). Additionally, in order to have standing to pursue a civil claim for a RICO violation, the plaintiff must allege that he has been injured thereby. *See id.*; 18 U.S.C. § 1964(c).

- 8 -

The terms enterprise, racketeering activity, and
pattern as used in the statute are terms of art.  An "enterprise"
is a legal entity or an association in fact.  *See* 18 U.S.C.
§ 1961(4).  "Racketeering activity" includes any act indictable
under a variety of federal criminal statutes including the mail
fraud statute, 18 U.S.C. § 1341, and the wire fraud statute, 18
U.S.C. § 1343.  *See* 18 U.S.C. § 1961(1).  A "pattern" of
racketeering activity involves at least two predicate acts
meeting the definition of racketeering activity.  *See* 18 U.S.C.
§ 1961(5).  Plaintiff alleges that defendant's pattern of
racketeering activity involved one act of mail fraud — sending
survey questionnaires to Brooklyn Law School graduates — and
one act of wire fraud — faxing the results of the survey to
*U.S. News.*

### (a) Failure to Plead a RICO Injury

As stated above, in order to establish a civil RICO
claim, a plaintiff must show that he was "injured in his business
or property by reason of" the RICO violation.  §18 U.S.C.
1964(c).  This requires a showing not only that the defendant's
alleged RICO violation was the "but-for" or cause-in-fact of his
injury, but also that the violation was the legal or proximate
cause.  *See Holmes v. Securities Investor Protection Corp.*, 503
U.S. 258, 268 (1992); *Powers v. British Vita, P.L.C.*, 57 F.3d
176, 189 (2d Cir. 1995); *First Nationwide Bank v. Gelt Funding
Corp.*, 27 F.3d 763, 769 (2d Cir. 1994).  The alleged RICO
violation proximately causes a plaintiff's injury if it is a

substantial factor in the sequence of responsible causation, and if the injury is reasonably foreseeable or anticipated as a natural consequence. *See In Re American Exp. Co. Shareholder Litigation*, 39 F.3d 395, 399-400 (2d Cir. 1994); *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 23-24 (2d Cir. 1990).

Plaintiff alleges that he was fraudulently induced to attend and then remain at Brooklyn Law School based on the publication of allegedly false salary information. The amended complaint describes the damages plaintiff suffered from his alleged injury as follows: (1) receiving a law degree with a lower value than it would have had had the salary information been accurate, and (2) the greater expense plaintiff incurred from enrolling at Brooklyn Law School instead of SUNY Buffalo. Plaintiff has adequately pled that the salary information was the proximate cause of his incurring a greater expense at Brooklyn Law rather than transferring to the allegedly less expensive SUNY Buffalo. It is naturally foreseeable that the allegedly false salary information would cause plaintiff, in choosing to stay at Brooklyn Law School, to incur the greater expense of attending law school in New York City as opposed to Buffalo.

With respect to plaintiff's other alleged injury, plaintiff contends that defendant's submission of false salary information caused him to accept a less valuable law degree and, inferentially, to earn less than he would have had the salary information been accurate. While again plaintiff has adequately plead injury "in his business or property," plaintiff's injury

cannot be said to have been proximately caused by defendant's false misrepresentations. While the allegedly false information may have been induced plaintiff to enroll and stay at Brooklyn Law School, that information was not "a substantial factor in the sequence of responsible causation" of his failure to earn more following his graduation from Brooklyn Law School than he would have earned if he had chosen some other law school. *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d at 23. Quite apart from the illogical of the proposition that plaintiff would have earned more on graduation had the salary figure for Brooklyn been accurate, too many variables enter into the determination of the salary a beginning student may expect to earn on graduation to make his income on graduation something that can be "reasonably foreseen or anticipated as a natural consequence" of a lack of candor in attracting an incoming law student. Just as the "stockbroker impeded by [his] employer's frauds in his 'ability to service his customers, keep them happy and earn a living for himself'" has no standing to sue his employee for his "loss of his client base," *Id.* at 24 (quoting *American Express Co.*, 865 F.2d 527, 529 (2d Cir. 1989), so plaintiff here has no standing to sue for the diminished value of his law degree. Plaintiff's Section 1962 (c) claim, in as much as it relates to receiving a law degree with a lower value than it would have had had the salary information been accurate, must be dismissed for failure to state a RICO injury.

- 11 -

### (b) Failure to Plead an Enterprise

Plaintiff has also inadequately pled a RICO enterprise, despite the fact that the amended complaint, somewhat whimsically and apparently alternatively, alleges nineteen separate RICO enterprises, all sharing the common purpose "to have various figures appear in publications of *U.S. News*."  (Am. Cl. ¶¶ 22, 25.)  None of the nineteen alleged enterprises are legal entities, so plaintiff must plead the existence of enterprises that are associations in fact.  *See* 18 U.S.C. § 1961(4); *see also Bernstein v. Misk*, 948 F. Supp 228, 235 (E.D.N.Y. 1997).

In pleading the existence of an association in fact, a plaintiff must allege three elements:  (1) a common purpose, (2) an ongoing structure and organization supported by personnel or associates with continuing functions or duties, and (3) a structure distinct from the pattern of racketeering activity in which the enterprise has engaged.  *See Elliot v. Foufas*, 867 F.2d 877 (5th Cir. 1989); *U.S. v. Lemm*, 680 F.2d 1193 (8th Cir. 1982); *cf. D'Orange v.  Feely*, 877 F. Supp. 152 (S.D.N.Y. 1995); *see also* Wright & Miller, Federal Practice and Procedure:  Civil 2d § 1251.1, at 344.

It is abundantly clear that plaintiff has not alleged that any of the purported enterprises has an ongoing structure and organization supported by personnel or associates with continuing functions or duties.  While many of the components of the alleged enterprises have such a structure and personnel, the enterprises themselves, as alleged, have none.  Plaintiff has

alleged no organization, hierarchy, administration, or agreements between the members of the alleged enterprises that would suggest the organized structure necessary to adequately plead the existence of an enterprise.  *See United States v. Rogers*, 89 F.3d 1326, 1337 (7th Cir. 1996); *United States v. Coonan*, 938 F.2d 1553, 1560-61 (2d Cir. 1991); *Moy v. Terranova*, 1999 WL 118773, *5 (E.D.N.Y. March 2, 1999).  Since the failure to plead RICO injury and enterprise adequately dooms both the substantive and conspiracy RICO counts, both counts must be dismissed.  *See Hecht.*, 897 F.2d at 25.   Plaintiff has therefore not adequately pled a RICO enterprise and the remainder of his Section 1962(c) claim must be dismissed.

### (c) Failure to Plead Fraud with Particularity under Federal Rule of Civil Procedure 9(b)

Even if plaintiff had properly pled injury and a RICO enterprise, the amended complaint would still have to be dismissed for failure to plead fraud with particularity.  If a complaint alleges that the predicate racketeering acts involve mail or wire fraud under 18 U.S.C. §§ 1341 & 1343, as is the case here, the pleadings must meet the requirements of Federal Rule of Civil Procedure 9(b), which provides:

> In all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Rule 9(b) must be read in conjunction with Rule 8(a)(2), which requires simply "a short and plain statement of the claim."  *See DiVittorio v. Equidyne Extractive Indus. Inc.*, 822 F.2d 1242,

- 13 -

1247 (2d Cir. 1987). Nevertheless, a complaint is insufficient if it fails to "'adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements.'" *McLaughlin v. Arthur Anderson*, 962 F.2d 187, 191 (2d Cir. 1992).

Plaintiff, pleading on information and belief, alleges no factual ~~particulars~~ support for his conclusion that the true average salaries for the years in question were ~~a third~~ two-thirds of the reported figures. Plaintiff may plead on information and belief when facts are peculiarly within defendant's knowledge, provided plaintiff alleges the facts upon which his belief is based. *See DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987); *Dornberger v. Metro. Life Ins. Co.*, 961 F. Supp. 506, 528 (S.D.N.Y. 1997). While plaintiff alleges that the results of the survey questionnaires is known only to defendant, he does not allege a factual basis for his conclusion that the salary information reported in *U.S. News* was not representative of the survey results.

Accordingly, for the reasons set forth above, defendant's motion to dismiss plaintiff's RICO claims is granted for failure to allege fraud with particularity.

### Failure to Plead Violation of Section 1962(d)

Plaintiff attempts to state a claim based on an alleged conspiracy between defendant and Cardozo Law School under Section 1962(d) to fraudulently induce plaintiff to attend defendant in violation of Section 1962(c).  A RICO conspiracy claim under Section 1962(d) involves the agreement "to commit the substantive racketeering offense through agreeing to participate in the two predicate acts" as a principal or as an aider or abettor as well as the defendant's knowledge "of the general nature of the conspiracy" and knowledge "that the conspiracy extends beyond his individual role."  *United States v. Rastelli*, 870 F.2d 822, 828, 832 (2d Cir. 1989).  Since plaintiff's claim under Section 1962(c) does not state a cause of action for a substantive violation of RICO, the present claim cannot set forth a conspiracy to commit such a violation. *See Discon Incorporated v. Nynex Corporation*, 93 F.3d 1055, 1064 (2d Cir. 1996); *Venuto v. Lightning Lube*, 4 F.3d 1153, 1191 (3d Cir. 1993) ("Any claim under § 1962(d) based on conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient."); *Danielsen v. Burnside-Ott Aviation Training Center, Inc.*, 941 F.2d 1220, 1232 (D.C. Cir. 1991).  Accordingly, defendant's motion to dismiss plaintiff's Section 1962(d) claim must be granted on this additional ground.

- 15 -

## Plaintiff's State Law Claims

With respect to plaintiff's state law claims, if plaintiff's federal law claims are dismissed before trial, then the principles of comity and federalism counsel dismissal of a plaintiff's state law claims. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *see also* 28 U.S.C. § 1367(c).[2]  Since plaintiff's federal claims are dismissed, his state law claims must be dismissed as well. Accordingly, defendant's motion to dismiss plaintiff's state law claims is granted.

## Request to Amend Complaint

Plaintiff requests that the Court grant him leave to amend the complaint in the event defendant's motion to dismiss is granted. Rule 15(a) of the Federal Rules of Civil Procedure instructs courts that leave to amend should be "freely given when justice so requires." Fed. R. Civ. P. 15(a). Leave to amend, however, need not be granted where the proposed amendment would be "futil[e]." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Any amendment seeking to set forth a claim for the diminished value of plaintiff's law degree or loss of earnings following graduation would be futile, and accordingly leave to amend to

---

[2]  28 U.S.C. § 1367(c) reads:

The district courts may decline to exercise supplemental
jurisdiction over a claim under subsection (a) if —
    (1) the claim raises a novel or complex issue of State law,
    (2) the claim substantially predominates over the claim or
claims over which the district court has original jurisdiction,
    (3) the district court has dismissed all claims over which it
has original jurisdiction, or
    (4) in exceptional circumstances, there are other compelling
reasons for declining jurisdiction.

- 16 -

allege such a claim is denied.  However, a court should not
dismiss a *pro se* complaint without granting leave to amend at
least once when a liberal reading of the complaint gives any
indication that a valid claim might be stated.  *See Gomez v. USAA
Federal Savings Bank*, 171 F.3d 794, 795-96 (2d Cir. 1999);
*Branum v. Clark*, 927 F.2d 698, 705 (2d Cir.1991).  Plaintiff's
allegations indicate that there may be a possibility that
plaintiff may cure the deficiencies of his pleading with respect
to the enterprise and fraud and thereby provide a jurisdictional
basis for his state law claims.  Accordingly, plaintiff's request
to file a second amended complaint to cure the deficiencies noted
in the present pleadings is granted.

CONCLUSION

For the reasons set forth above, defendant's motion to
dismiss the amended complaint is granted with leave to file a
second amended complaint within thirty days of the date of this
opinion.

The Clerk is directed to furnish a filed copy of the
within to all parties and to the magistrate judge.

SO ORDERED.

Dated :   Brooklyn, New York
          March 27, 2000

_____
United States District Judge